## IN RE DISBARMENT OF EVAN HUGHES.[1]

May 27, 1932.

No. 28,573.

*Oscar G. Haugland* and *McNeil V. Seymour,* for state board of law examiners.

*Evan Hughes,* pro se.

[1]Reported in 242 N. W. 711.

Per Curiam.

On the petition for rehearing the matter was rereferred to Honorable C. M. Tifft, judge of the eighth judicial district, for additional findings; and the same having been made and filed and the entire findings as now made resubmitted to this court for decision, the former opinion is withdrawn and the following filed in lieu thereof.

The principal charge of misconduct against respondent relates to his dealings with a Mrs. Wheatley and a Mrs. Garnhart in connection with a sale of a certain house and lot in Mankato. Respondent had been Mrs. Wheatley's attorney in recovering the property and assisted in negotiating the sale to Mrs. Garnhart and her husband. The property was sold under a contract for deed dated September 2, 1922, the price being $4,900, of which $500 was paid at the time the contract was executed. The balance was to be paid in instalments of $45 every month. The unpaid portion of the purchase price was to draw interest at six per cent until fully paid. Soon after the deal Mrs. Garnhart learned that there was a $3,500 mortgage on the property dated June 22, 1920, upon which a payment of $300 of the principal fell due on June 22 each year, also interest. She became uneasy about her situation in case Mrs. Wheatley should fail to apply the monthly payments in reduction of the mortgage. Respondent was consulted, and upon his advice both women agreed that Mrs. Garnhart should make the monthly payments to respondent and that he should therewith pay the interest and instalments on the mortgage as the same became payable. This was done, and respondent considered himself a trustee of the moneys so received.

The referee now finds that the relation of attorney and client between respondent and Mrs. Wheatley terminated on September 2, 1922, and that he in good faith considered such relation to have then terminated. And it is also found that respondent "in June, 1924, notified both Mrs. Wheatley and Mrs. Garnhart that he would not thereafter act for Mrs. Wheatley in any manner whatsoever and the relationship theretofore existing between Mrs. Wheatley and" respondent was thereupon terminated. It appears that the final in-

stalment on the mortgage, with interest, amounting to $1,802, came due June 22, 1927. The amount received by respondent from the monthly payments upon the contract for deed, deducting the amount he had applied upon the interest and the yearly instalments of principal on the mortgage, was insufficient to pay the same, and the mortgagee threatened foreclosure. Mrs. Wheatley was about to leave the state for California, and respondent besought her to make some arrangement with Mrs. Garnhart before leaving so as to protect her. But the latter could not be found, and Mrs. Wheatley would not delay her departure. Thereupon respondent proposed to Mrs. Wheatley to buy her interest in the property for $300. The proposition was accepted, and she conveyed to him. Afterwards Mrs. Garnhart sought a loan, respondent assisting, but was unable to obtain one large enough to pay the mortgage in the condition the property was in. It was then ascertained that if respondent had the title in his name and made some needed improvements on the property a loan sufficiently large could be obtained by respondent. This was done, Mrs. Garnhart transferring her interest to him. Respondent then put the house in proper repair, executed a mortgage to Mankato Savings & Building Association for $2,300, and gave a contract for deed to Mrs. Garnhart under which she agreed to buy the property for $2,300 and assume the $2,300 mortgage. Respondent had expended moneys in repairing the dwelling and had also done some legal work for Mrs. Garnhart, and he and she had an accounting and agreed that the sum of $2,300 was the correct amount due upon the original contract with Mrs. Wheatley, considering the expenditures and fees mentioned and the amount of the new mortgage. Mrs. Garnhart performed her contract, and on January 8, 1928, respondent gave her a warranty deed to the property subject to taxes and the $2,300 mortgage, which she assumed and agreed to pay. The referee found that in all his dealings with Mrs. Garnhart respondent had at all times acted in good faith with the sole view of protecting Mrs. Garnhart's rights in the property. Hence, in so far as respondent's dealings with Mrs. Garnhart go, we can find no cause for disbar-

ment or discipline. However, it is not amiss to say that had respondent possessed a fine sense of his obligations to his client Mrs. Garnhart he would have given her whatever benefit there was in the bargain he got when he purchased Mrs. Wheatley's interest in the property. On procuring the latter's interest he claims to have been actuated by the laudable motive of protecting his client Mrs. Garnhart, in addition to his desire to collect $50 he had loaned Mrs. Wheatley.

The charge in relation to Mrs. Wheatley presents a different problem due to the fact that a judge of the district court, in a suit brought by Mrs. Wheatley against respondent to recover the monthly payments made by Mrs. Garnhart to respondent, found that respondent received such payments as Mrs. Wheatley's agent and attorney and directed judgment against him for the amount of such payments, less the interest and principal instalments he had paid on the mortgage. Respondent paid such amount without seeking a new trial or waiting for the entry of judgment. We have now in this proceeding findings by a referee, also a judge of the district court, directly opposed to the first mentioned finding. A little reflection makes clear that the first finding is not conclusive on respondent in this proceeding. By failure to adduce available evidence or through mistake of either court or counsel, the right result may not have been arrived at in the lawsuit. By additional evidence and a more careful presentation of the matter a different conclusion may properly have been reached in this proceeding. Then again, in the additional findings the referee finds that respondent in good faith did not consider that he was the agent or attorney of Mrs. Wheatley after September 2, 1922. It is readily seen that a bona fide dispute may arise between an attorney and a layman as to the former having occupied the relationship of agent or attorney to the latter in certain transactions or during a certain period of time. And if the parties go into court where it is determined adversely to the attorney and he abides by the determination, that does not necessarily brand the attorney as having been guilty of professional misconduct, provided he in good faith had

acted under the honest belief that the relationship did not exist. It is quite easy to suppose that in a case like the one before us, where two women in a business deal seek the aid of one attorney, an honest dispute might arise as to whether in the transaction and subsequent dealings arising therefrom he represented and acted for both or for the one only, and which one. He should not be disbarred or disciplined if he honestly and in good faith considered that he was the attorney or agent for one only and acted accordingly, even though a court or jury has found that he should be held as the attorney for the other party to the transaction.

While we feel that respondent should neither be disbarred nor disciplined, a man now past 70 years of age who has occupied positions of honor and trust in the community, there is much in this record that does not meet with our approval. The moneys which came into respondent's hands were trust funds, he so considered the same; yet he commingled those moneys with his own. He kept no books of account nor office docket where he made his activities as an attorney a matter of record. All in all, his business methods make for confusion, and it is almost impossible to figure out from stray checks and scattered receipts and memoranda produced the exact amounts or time the moneys received by him as trustee were received or were disbursed. It may also be said that the impression is forced upon one from this record that respondent is overly anxious for gain.

Upon the findings of the referee this proceeding against respondent is dismissed.

LORING, J. took no part.